EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DIONISIO PEARSON, acusado y apelante.

Núm. 6675.—*Sometido:* Noviembre 18, 1937. *Resuelto:* Noviembre 24, 1937.

*C. Santana Becerra,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El 15 de noviembre de 1935 el Fiscal del Distrito de San Juan formuló acusación contra Dionisio Pearson imputándole la comisión de un delito de portar armas prohibidas.

Contra el acusado formuló el fiscal otra acusación por delito de atentado a la vida, sometiéndose la causa por portar armas a la decisión de la corte por la misma prueba practicada en la de atentado a la vida.

El 29 de mayo de 1936 la corte de distrito dictó sentencia condenando a Pearson como autor del delito de portar armas prohibidas y es contra esa sentencia que se interpuso el presente recurso de apelación en el que se señalan dos errores, el primero cometido al estimar la corte que hubo prueba suficiente y el segundo al no resolver que la prueba fué contradictoria y al no dar el beneficio de la duda al acusado.

---

[*] NOTA: Véase el prefacio.

Dijo la corte razonando su sentencia:

"En cuanto al proceso por portar armas, la denuncia imputa al acusado que el día 24 de octubre de 1935 en Río Piedras, que forma parte del Distrito Judicial de San Juan, P. R., ilegal, voluntaria y maliciosamente portaba sobre su persona con fines de ofensa y defensa, un revólver, que es un arma de fuego, con la cual allí y entonces podía causarse grave daño corporal.

"Hemos leído la parte del récord que ya está transcrita por el taquígrafo, y hemos hecho que éste nos traduzca verbalmente sus notas de todas las declaraciones prestadas durante el juicio por el delito de atentado a la vida. De la declaración de Jorge Pérez, cabo de la Policía Insular, tomamos lo siguiente:

" 'P.—¿Quiénes tenían armas en la mano? R.—El acusado y los tres ocupantes del carro. . . . P.—¿Pero en el tiroteo, Pearson disparó? R.—Sí, señor. . . P.—¿Cuando usted oyó que Pagán dijo, según sus palabras 'a tiro limpio,' qué hizo usted? R.—Yo estaba en la acera y traté de ver, bajé la cabeza y los ví a todos armados y trataba con Pagán de quitarle la pistola, cuando los de atrás me tiraron y caí herido y me llevé la pistola de Pagán. . . . P.—¿Con qué arma le disparaba el acusado? R.—Yo ví arma de fuego y ví los tiros cuando me los disparaba, pero no puedo describirle el arma. . . . P.—¿En qué asiento iba él? R.—En el asiento trasero derecho.'

"'La declaración del policía Orlando Colón contiene lo que sigue:

" 'P.—¿Quiénes entraron a tiros? R.—Los ocupantes del automóvil. P.—¿Pearson disparó? R.—Sí, señor.'

"José S. Barreiro, que no es policía, dice en su declaración:

" 'P.—Tenga la bondad de explicarle a estos señores lo que pasó en Río Piedras el 24 de octubre de 1935. R.—Ese día estando yo en la calle Brumbaugh en la acera al lado izquierdo mirando hacia el cuartel de la policía, vi un carro parado frente a un cafetín, no sé el nombre del cafetín, y vi salir un tiro de un carro. P.—¿De dónde salió el tiro? R.—Del automóvil y después un tiroteo entre paisanos y policías. Los paisanos estaban dentro del carro.'

"La declaración de Domingo Beniamino, Jefe de Distrito de la Policía Insular, contiene lo siguiente:

" 'P.—¿Quiénes dispararon allí? R.—Yo vi disparar a dos de los ocupantes del carro. P.—¿Quiénes? R.—Pagán y el acusado Pearson. P.—¿Usted vió disparar al acusado Pearson? R.—Sí, señor. . . . P.—¿Usted ocupó algo allí, jefe R.—Un revólver. P.— ¿En dónde? R.—En los pies del acusado. P.—Mire a ver si fué un revólver parecido a éste. . . . R.—Sí, señor. . . . P.—¿Y us-

ted vió, además del que guiaba, quién más disparó contra la policía? R.—Disparó Pearson, el acusado.'

"Por último, la declaración de Isolina Rondón, testigo de la defensa, contiene lo siguiente, con referencia a los ocupantes del automóvil:

" 'R.— . . . Inmediatamente el policía que venía al lado izquierdo, que según supe era el Cabo Pérez, le disparó al señor Pagán directamente en la cara e inmediatamente toda la policía rodeó el carro y siguió disparando dentro del carro y por todo el lado. Entonces ellos hicieron tantos y tantos disparos que en ese tiroteo cayó el policía Pérez al suelo y no pudo pararse de allí.'

"Si hemos de dar crédito a la declaración de los testigos del Pueblo, el delito de portar armas está más que probado. No encontramos en todas las declaraciones ningún elemento que nos permita poner en tela de juicio la declaración de los policías, la que sostiene el hecho de que el acusado mientras estaba en un automóvil en unión de otras personas, tenía un revólver en la mano y con él disparó. Se ha resuelto que esta evidencia es suficiente para justificar una sentencia por un delito de portar armas prohibidas. *El Pueblo* v. *Calderón,* 46 D.P.R. 887.

"Nada hay en la prueba de la defensa que desvirtúe o haga incompatible con la verdad e inverosímil la presunción de que los testigos del Pueblo han dicho la verdad. En la resolución de este caso el juez no puede ir más allá de lo que dice la prueba que fué practicada en el proceso por atentado a la vida. Ambos procesos son de distinta naturaleza; y la absolución en el caso por atentado a la vida no apareja necesariamente la absolución en el caso por portar armas."

Hemos leído cuidadosamente el alegato del apelante. Nada contiene a nuestro juicio que haga siquiera dudar de la corrección del fallo recurrido. La transcripción del récord sostiene las conclusiones de la corte. Se trata de un recurso frívolo interpuesto con el único propósito de dilatar la ejecución de la sentencia. Debe, en tal virtud, declararse sin lugar, *quedando la sentencia confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.